IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KILL JOE NEVADA, LLC

      Plaintiff,

v.

DOES 1-19,

      Defendants.

CIVIL ACTION NO.
1:13-cv-1516-JEC

**ORDER & OPINION**

    This matter is presently before the Court on the plaintiff's Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference [2].  Before appreciating the manageability problems posed by the type of joinder the plaintiff asserts, this Court granted the instant motion. (Order [3] at 1.)  Upon further review, however, it appears the plaintiff's suit is part of a growing number of copyright cases which attempt to improperly join multiple defendants into a single action.  Therefore, for the reasons set out below, the Court **VACATES** its May 8, 2013 Order [3].  John Does 2-19 are **SEVERED** and the actions against them are **DISMISSED WITHOUT PREJUDICE.**  With respect to John Doe 1, the only defendant now remaining in this action, the plaintiff's motion [2] is **GRANTED.**

**BACKGROUND**

The plaintiff brings this copyright action, as well as eleven (11) other essentially identical actions in this district, against anonymous defendants identified only by their internet protocol ("IP") addresses.  Plaintiff asserts that the unnamed defendants "acted in a collective and interdependent manner" to unlawfully reproduce and distribute plaintiff's copyrighted work, Killer Joe (the "movie").  (Compl. [1] at ¶ 4.)  They also assert that the only way to obtain the actual names of the alleged infringers is by subpoenaing third-party Internet Service Providers ("ISPs"), who keep the names associated with the IP addresses as part of their regular course of business.  (Pl.'s Mot. for Leave (Pl.'s Mot.") [2] at 8.)

The Court now considers, *sua sponte*, the issue of whether the unnamed defendants were properly joined under FED. R. CIV. P. 20.

**DISCUSSION**

The Court notes that the instant series of litigation is part of an "'outbreak of similar litigation . . . around the country,' in which copyright holders have attempted to assert claims against multiple unknown defendants by joining them, in often large numbers, into a single action." *The Bicycle Peddler, LLC v. Does 1-98*, Civ. No. 1:13-cv-921-CAP, Order at Dkt. No. [5] at 3 (citing *On The Cheap, LLC v. Does 1-5011,* 280 F.R.D. 500, 502 (N.D. Cal. 2011)).  These cases arise from the use of the file-sharing technology known as

2

BitTorrent. Essentially, BitTorrent allows users to simultaneously upload and download a file, often a copyrighted work, by being part of a "swarm." *See id.* at 3-4.

In more technical terms, BitTorrent's swarm process has been described as follows:

> In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."
>
> The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

*Diabolic Video Prods., Inc. v. Does 1-2099,* No. 10-cv-5865-PSG, 2011 WL 3100404, at *1-2 (N.D. Cal. May 31, 2011)(Grewal, Mag. J.).

Plaintiff in this case, like other similarly situated plaintiffs, argues that the unnamed defendants participated in one of these BitTorrent "swarms" in order to illegally download and upload its copyrighted work, Killer Joe. (Compl. [1] at ¶ 4.) Plaintiff

3

submits a declaration by Darren M. Griffin with their motion for leave to take discovery prior to a Rule 26(f) conference. (*See* Darren Griffin Decl. [2-1].) Using special forensic software provided by the Crystal Bay Corporation, Griffin attests that he isolated the specific transactions, the IP addresses and the location of the users responsible for copying and distributing the movie. (*Id.* at ¶ 8.) He also attests that he confirmed that the identified users were sharing the exact same copy of the movie by looking at a unique string of characters that identifies any audiovisual work, known as a "hash checksum." (*Id.* at ¶ 10.) Thus, plaintiff argues, the users identified in the complaint acted in concert since, by the nature of the BitTorrent software, a user simultaneously uploads and downloads the same copy of the movie. (Compl. [1] at ¶ 11.) This practice is known as the "swarm joinder" theory and many courts, including several within this District, previously considered and rejected this theory. *Raw Films, Inc. v. Does 1-32,* Civ. No. 1:11-cv-2939-TWT, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011); *The Bicycle Peddler, LLC*, Civ. No. 1:13-cv-921-CAP, Order at Dkt. No. [5] at 4.

I.  **MISJOINDER**

Pursuant FED. R. CIV. P. 20(a)(2), a person may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or

4

arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." While misjoinder is not a ground for dismissing an action, Rule 21 permits a court, whether on motion or on its own, to sever any claim against any party as long as it is "on just terms." FED. R. CIV. P. 21.

Rule 21 affords district courts broad discretion to sever improperly joined defendants. *Breaking Glass Pictures, LLC v. Does 1-99*, Civ. No. 1:13-cv-882-AT, Order at Dkt. No. [6] at 7. These courts "consider several factors in determining whether to exercise this discretion and sever defendants including whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the claim is severed." *Id.* (internal citations and quotations omitted). As in *Breaking Glass*, these factors weight in favor of severance.

### A.   Same Transaction or Occurrence

First, the complaint does not allege facts sufficient to show that the John Does in this case were involved in the same transaction or occurrence. The complaint alleges that "[b]ecause of the nature of a BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is

5

automatically a source for the subsequent peer *so long as that prior user is online at the time the subsequent user downloads a file*." (Compl. [1] at ¶ 12)(emphasis added). Further, a user may manually disconnect from the "swarm" at any time or their BitTorrent client may disconnect automatically. *Diabolic Video*, 2011 WL 3100404, at *2.

Therefore, for the unnamed defendants to be involved in the same transaction, one defendant would necessarily need to be connected to the internet and still actively distributing data through its BitTorrent client at the same time as another user for that user to be able to connect and "share" a copy of the movie. (*See* Compl. [1] at ¶¶ 10-12.)

However, plaintiff's own evidence illustrates the unlikelihood that many of the defendants identified in this action were online and "sharing" at the same time. For example, John Doe 2 was observed to have been in the BitTorrent swarm on April 7, 2013. (Activity Log, attached to Pl.'s Compl. [1] as Ex. A.) John Doe 10, however, was observed to be participating on January 22. (*Id.*) Therefore, John Doe 10 needed to stay online for over two (2) months in order to be involved in the same transaction as John Doe 2. This seems implausible at best. *See Breaking Glass Pictures, LLC,* Civ. No. 1:13-cv-882-AT, Order at Dkt. No. [6] at 8; *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011)("In fact, the nearly six-week span covering the activity associated with each

6

of the addresses calls into question whether there was ever common activity linking the 51 [IP] addresses in this case."); *K-Beech, Inc. v. John Does 1-47,* Civ. No. 1:11-cv-2968-WSD, Order at Dkt. No. [7] at 6.

Further, it appears that the main link between the defendants in this suit is not their participation in the same "swarm," but their connection to this district since the plaintiff has filed very similar copyright actions for the movie in at least eight other districts.[1] *See K-Beech*, Civ. No. 1:11-cv-2968-WSD, Order at Dkt. No. [7] at 7 n.8.  In fact, at least one of these cases involves a file identified by the same unique "hash" as one of the cases before the undersigned,[2] an identifier which the plaintiff states is a unique to each "swarm."  (Compl. [1] at ¶ 20.)  Thus, according to plaintiff's own complaints, those cases must involve the same "swarm," but the defendants from the Colorado action were not joined in the action brought before this district.  *Compare Killer Joe Nevada, LLC,* Civ No. 1:13-cv-1450-JEC, Compl. at Dkt. No. [1] at ¶ 20 (N.D. Ga. Apr 30, 2013) *with Killer Joe Nevada, LLC v. John Does 1-17,* Civ. No.

---

[1] Plaintiff has filed similar copyright suits in the District of Colorado, the District of Delaware, the Central District of Illinois, the Eastern District of Tennessee and the Northern and Southern Districts of Iowa and Ohio.

[2] As previously mentioned, in the span of a single week, plaintiff filed essentially the same copyright action eleven times against different sets of John Does.

7

1:13-cv-1292-WYD-MEH, Compl. at Dkt. No. [1] at ¶ 38 (D. Colo. May 17, 2013).[3]

For these reasons, the Court finds that the instant facts, as alleged, do not indicate that the defendants participated in the same transaction or occurrence or were "acting in concert." Therefore, this factor weighs heavily in favor of severing the defendants.

### B.   Judicial Efficiency

Keeping these John Doe defendants joined would not promote judicial efficiency. In fact, it would likely lead to logistical confusion and an increased burden on the Court. As Judge Spero aptly points out:

> [P]ermitting joinder would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving different evidence and testimony. In this respect, the Court also notes that in Exhibit A[4] to the Complaint there are listed [several][5] different internet service provides associated with Doe Defendants, which could also give rise to different ISP-specific defenses, evidence, and testimony.

---

[3] As of the date of this order, neither the district nor magistrate judge assigned to the Colorado action has issued a substantive order addressing any of the plaintiff's claims.

[4] By happenstance (or perhaps not), Exhibit A of Killer Joe Nevada's complaint is also the list of defendants identified by their IP addresses and the ISPs that provide them service.

[5] In *Hard Drive*, there were 13 different ISPs. *Hard Drive*, 809 F. Supp. 2d at 1164. In the instant action, customers from only one ISP have been identified as potential infringers.

8

*Hard Drive,* 809 F. Supp. 2d at 1164.

These fears of the potential for such a logistical nightmare are not unfounded or purely speculative in nature. For example, before severing joined defendants in a similar action, one district court noted that it was inundated with multiple defendants filing separate motions to quash raising differing defenses, from innocence to improper joinder to improper venue. *See On the Cheap*, 280 F.R.D. at 502-503.

### C. Prejudice to the Parties

Third, not only will keeping the defendants joined create a huge logistical burden on the court, it will likely prejudice the defendants. For example, although the only relation between defendants may be their use of BitTorrent, each defendant would be required to serve *all* of the other defendants with all pleadings. *See Breaking Glass Pictures, LLC*, Civ. No. 1:13-cv-882-AT, Order at Dkt. No. [6] at 9. This task would be made only more burdensome to those defendants who decide to proceed *pro se*. Even more frightening to the Court is that all of the defendants have a right to be at the other defendants' depositions and all courtroom proceedings, creating a situation that may be logistically impossible without instituting the use of mini-trials. *See Hard Drive,* 809 F. Supp. 2d at 1164.

Further, similar prejudice does not exist for the plaintiff. Nothing in today's court order prevents the plaintiff from

9

individually suing each defendant and moving forward with each instance of alleged infringement separately. In fact, as concluded below, the Court grants plaintiff's motion for leave to take discovery to determine the contact information for John Doe 1 so that this unnamed defendant can be properly identified.

For these reasons, this factor also weighs in favor of severing the defendants.

### D.   Conclusion

This Court follows the reasoning of the majority of district courts, including this district, which reject the "swarm joinder" theory. *See Breaking Glass Pictures, LLC,* Civ. No. 1:13-cv-882-AT, Order at Dkt. No. [6] at 9 (listing several cases within this district which reject the swarm joinder theory). For the reasons set forth above, joinder of the 19 defendants in this case is not appropriate under FRCP 20 and, thus, the Court exercises its discretion to sever all but the first John Doe defendant.

### II.  **PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

As mentioned above, the Court previously granted plaintiff's motion [2]. (*See* May 8, 2013 Order [3] at 1.) While the plaintiff properly asserts the need for expedited discovery, the May 8 Order grants this motion with respect to *all* of the defendants. However, as explained above, John Does 2-19 have been severed from this

action. For this reason, the May 8 Order is **VACATED**. However, with respect to John Doe 1, the May 8 Order properly granted the motion. Therefore, for good cause shown, the Court **GRANTS** plaintiff's motion for leave to take discovery [2] with respect to the sole remaining defendant in this case.

## CONCLUSION

For the reasons set forth above, the Court **SEVERS** John Does 2-19 and the claims against them are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff is **DIRECTED** to designate any actions filed against these severed defendants as "related" to this action, if they allege claims like those in the complaint filed here.

The Court **GRANTS** plaintiff's motion [2] as to the first defendant, John Doe 1.

SO ORDERED, this 28th day of May, 2013.

>                /s/ Julie E. Carnes
>                JULIE E. CARNES
>                CHIEF UNITED STATES DISTRICT JUDGE

11

AO 72A
(Rev.8/82)